CENTRAL VICTORIA, INC., Plaintiff and Appellee, *v.* WILLIAM P. KRAMER, CHIEF OF INSULAR FOREST SERVICE, Defendant and Appellant.

No. 5221. Argued May 10, 1932.—Decided November 28, 1933.

*James R. Beverley, Attorney General,* and *M. Rodríguez Serra, Assistant Attorney General,* for appellant. *Cayetano Coll y Cuchí* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The judgment in the instant case was rendered on May 16, 1928, and ten days afterward an appeal was taken therefrom.

On January 20, 1930, the stenographer of the trial court, for the purpose of perfecting the appeal, issued the following certificate:

"I CERTIFY: That the foregoing is a true and faithful transcript of the oral evidence introduced by the parties in this case; and that the documentary evidence is not included herein because the Department of Justice has signified to me that the original documents will be sent up to the Hon. Supreme Court of Puerto Rico."

Eight days afterward, on January 28, 1930, the trial judge authenticated the transcript thus:

"DOES HEREBY CERTIFY: That the foregoing is a true and faithful transcript of the oral evidence introduced by the parties in the present case, and of all the proceedings and acts of this court during the trial of this case; and that the same has been approved by the court after hearing the parties, who made no objection thereto."

Said transcript was filed in the office of the secretary of this court on February 4, 1930, together with a certificate issued on February 3, 1930, by the clerk of the trial court and which reads as follows:

"I CERTIFY: That during the trial of this case which took place on April 13, 1928, there was offered the following documentary evidence which was admitted by the court:

"BY THE PLAINTIFF: Exhibit No. 1. Deed of sale and mortgage No. 52, executed on August 3, 1928, before Notary Gustavo Cruzado Silva by Luis Rubert y Catalá and his wife, Antonia Armstrong y Mayoral, and Pedro Giusti and his wife, María Giusti, in favor of Central Victoria, Inc."

Then follow similar descriptions of plaintiff's exhibits 2 to 15 and 19 to 35, without making any mention of exhibits 16, 17, and 18. This is followed by a like description of defendant's exhibits A to I, and the document concludes as follows:

"And I likewise certify that all of the aforesaid documents are the ones attached to this certificate and form part of the record of the case, which certificate is issued at the request of the Attorney General of Puerto Rico, to be forwarded to the Supreme Court, . . ."

The appellant's brief was filed on May 15, 1930, and the appellee's brief on February 10, 1931.

760

The hearing of the appeal took place on February 17, 1931. The following excerpt is taken from the minutes of the hearing prepared by the secretary:

"Attorneys M. Rodríguez Serra, Assistant Attorney General and C. Coll y Cuchí respectively argued against and for the judgment. The former was granted leave to produce a certificate to show the intervention of the district judge regarding the sending up of the original documents introduced in evidence, and a term of three days was allowed for this purpose. A similar term was allowed to the appellee in order to state in writing what original documents were not sent up."

On March 9, 1931, the trial judge issued the following certificate:

"THE UNDERSIGNED, Judge of the District Court of San Juan, DOES HEREBY CERTIFY:

"That this case was tried before the undersigned judge, who rendered the judgment from which an appeal has been taken to the Supreme Court of Puerto Rico.

"That early in 1930 the parties submitted to the undersigned a written stipulation, wherein it was substantially set forth: That the documentary evidence introduced at the trial by the parties should be transmitted as offered, that is, in its original form, to the Supreme Court, for the purpose of the appeal, instead of being transcribed; and the purpose sought by such stipulation, as both parties stated to the undersigned, was to expedite the prosecution of the appeal, because the large volume of the documents introduced and admitted at the trial would require much time in the preparation of the transcript of the evidence, which it was their desire to avoid. That pursuant to instructions issued by the undersigned, a careful search has been made of the records in the office of the clerk of this court for the purpose of locating the original of the stipulation executed by the parties in this case, but without success, and therefore the conclusion has been reached that the document in question has been mislaid. That said stipulation was approved by the undersigned because he considered as reasonable the grounds on which the same was based.

"HE FURTHER CERTIFIES that the description of the documentary evidence, certified to by Pedro del Manzano, assistant clerk of this court, which was sent up together with the record and the transcript

of the evidence to the Supreme Court, is a correct transcript of the documentary evidence introduced, as appears from a reading of the transcript of the evidence.

"HE FURTHER CERTIFIES that the documents attached to this certificate correspond to plaintiff's exhibits 16 and 17, which were not included among those sent up with the transcript, but Exhibit 18 is not to be found in the record although a careful search has been made therefor."

"And at the request of the defendant and to be filed in the Supreme Court of Puerto Rico, I issue the present certificate at San Juan, Puerto Rico, this 9th day of March, 1931. (Signed) C. Llauger Díaz, District Judge."

On May 4, 1932, a new hearing was set for May 10, 1932. On the latter date, only the appellee appeared by its counsel. It made an oral motion to dismiss the appeal because of the failure to prepare the transcript of the record in accordance with the law.

The certificate made by the stenographer and approved by the judge covers the entire oral evidence introduced at the trial. The documentary evidence was presented during the examination of the witnesses, and the transcript shows the precise time at which the documents were introduced.

We have compared the said transcript with the certificate issued by the clerk on February 3, 1930, and with that issued by the judge on March 9, 1931, and it agrees with them. There is only missing plaintiff's exhibit 18, which consisted of a map drawn by the surveyor Aniceto Díaz, a witness for plaintiff.

Such being the form in which the record has been sent up, has the appellant placed this court in a position to decide the appeal taken?

Act No. 70 of 1911, to amend sections 92, 123, 227, and 299 of the Code of Civil Procedure, provides that: "The record of an appeal shall be constituted by the certificate to be issued by the secretary of the court a quo or by the attorneys of the parties, of the judgment roll and of the notification of the appeal."

There is no question as to the judgment roll containing the pleadings. It was certified to by the secretary. Nor is there any question with respect to the oral evidence. The question arises in regard to the documentary evidence.

Section 299, as amended by the said Act No. 70, provides that: ''When it should become necessary for an accurate intelligence and resolution of the matter, that a map, original document or exhibit of any sort, which cannot be reproduced by copy, photograph or otherwise, be submitted to the examination and inspection of the Supreme Court, a description thereof shall be made, and the secretary of the court *a quo* after making for identification said map, original document or exhibit under his hand and the seal of the court, shall send same to the secretary of the Supreme Court stating that they form part of the records in the case.''

The original certificate attached to the transcript was clearly insufficient. Was the same perfected by the certificate issued afterwards by the judge?

There is no doubt that the original documents consisting of maps could have been forwarded, as required by law; but the sending up of the original deeds and the original certificates issued by the registrar and by the Commissioner of the Interior was not at all justified. Such a practice is not authorized either by law or by the precedents.

However, as the authenticity of the documents has been established, and as the very party which now seeks a dismissal agreed to the sending up of the said documents to the Supreme Court in the above form, we have decided to exercise our discretion and to allow the prosecution of the appeal, but this decision should not serve in the future as a precedent to be followed.

Now, what can be the result of the failure to produce exhibit 18? Said exhibit was a map introduced for the purpose of supplementing, or in consequence of the testimony of a surveyor, and from the opinion we have formed of the

case, its omission will cause no prejudice to the party who introduced it in evidence.

The essential question involved in the suit is as to who is entitled to the occupancy and enjoyment of a certain parcel of land bounded on the north by the Suárez Channel and on the west by the San José Lagoon. The plaintiff alleged that said parcel is part of an estate of which it is the lawful owner by purchase, and that he has been in possession thereof by himself and through its predecessors in interest for more than thirty years without any interruption whatever until the time when the defendant forcibly entered upon the premises, cutting and selling wood and preventing the plaintiff from exercising its ownership rights. The defendant averred that the parcel belongs to The People of Puerto Rico and that he is in possession thereof as Chief of the Forest Service. He further maintained that the court was without jurisdiction because The People was the real party in interest and had not given its consent to be sued.

The jurisdictional question was decided in the sense that the defendant could be sued (*Central Victoria* v. *Kramer,* 35 P.R.R. 168), and the court, after weighing the evidence introduced by the parties at the trial, rendered judgment for the plaintiff. In its statement of the case and opinion the court expressed itself, in part, as follows:

"From the evidence as a whole the court finds that the plaintiff derives its title to the parcel described in the complaint from one José Suárez, who on or about October 5, 1875, was the owner of several parcels of land, as appears from a certificate issued by the Registrar of Property of San Juan, Second Section, and which we deem it unnecessary to transcribe in this opinion. The court also holds it as proven that the above parcels of land were the object of successive conveyances and were finally acquired by the plaintiff corporation which has its titles recorded in the registry of property; and that from the evidence as a whole, both oral and documentary, the plaintiff has always been in the free enjoyment and peaceful possession of the property described in the complaint, without its possession having ever been interrupted."

We have carefully examined the record and in our opinion an affirmance lies of the judgment appealed from, not only on the strength of the allegations and the evidence of the plaintiff but also on the evidence introduced by the appellee itself.

There is no doubt that the parcel of land in controversy, which covers nearly three hundred acres of land partly mangrove swamp, partly *maraguey,* and partly pasture, came to be owned and possessed by the plaintiff after successive conveyances executed by public deeds, recorded in the registry of property, setting forth invariably the boundaries of the channel and the lagoon respectively on the north and west, the first record having been made on May 30, 1881, in favor of José Suárez. Comparing the deeds, the certificates from the registrar, and the plats presented by the plaintiff with the topographical map of the land in Cangrejos Arriba belonging to the Royal Treasury (*Real Hacienda*) drawn in 1859 by the surveyor José Antonio Calderón, with the map made in 1864 by Calderón himself of a portion of vacant land (*baldío*) granted to José Suárez, with the plat of lot No. 2 of the land in Hato de Cangrejos Arriba owned by José Suárez, containing more than four hundred acres, drawn in 1873 by the surveyor Juan Horta, and with the record of the proceeding of the Range Division (*Inspección de Montes*), commenced in June, 1885, to determine whether Bernardo Suárez was the owner of certain mangrove swamps in the district of Carolina—defendant's exhibits F, G, H, and I— there is no doubt, either, that the parcel in question had been sold by the Royal Treasury Department to plaintiff's original predecessor in interest.

It appears from the record of the said proceeding that, on June 12, 1885, Bernardo Suárez for himself and as the legal representative of his minor children born of his marriage to María de Jesús Urrutia, and at the request of José Suárez and Gaspar Bariola, wrote to the Governor General of the Island as follows:

"That the aforesaid Bariola is the owner of certain land, awarded at public auction by the Treasury Department to José Suárez, who sold the same to María de Jesús Urrutia and the latter in turn conveyed it to the said Bariola, consisting of lot No. 2 of Hato de Cangrejos, bounded by the Cangrejos Lagoon and the channel known as Hoyo Mulas, as appears from the public deed attached hereto, the return of which is requested, as it is needed for other purposes.

"Having read a notice posted in the city hall of Carolina calling for bids for the granting by the Range Division of the use of the mangrove swamps, as a consideration has been paid to the Government for the land included therein and as the said channel is the work of man and not of nature, such land is not covered by the Law of Waters:

"I pray of you to kindly order the suspension of the public auction and to direct that such private property be respected, since it having been sold by the Treasury Department its usufruct belongs solely and exclusively to its lawful owners who acquired it in good faith and have paid and still pay taxes thereon."

An inquiry into the matter, including the antecedents thereof, was ordered and a report thereon was made, on August 11, 1885, to the Governor General by Cesar de Guillerna, a member of the National Corps of Engineers of the Puerto Rico Range Division, which report says:

"From the record of the proceeding of the sale of Hato de Cangrejos Arriba, which has been referred to this Division for a report regarding a claim filed by Bernardo Suárez in opposition to the lease of further mangrove swamps in the 'Torrecilla' or Mata Redonda Lagoon which he claims belong to him as being part of lot No. 2, purchased by him at public auction from the Treasury Department it appears that although the notice of the sale by public auction of the various lots, into which the said Hato had been divided for the purpose of the sale, made no mention of the mangrove swamps, when delivery of the lots was effected the person charged with the survey thereof included within each lot. the portion of mangrove swamp contiguous thereto, in view of the smallness of their area.

"The officials of the Treasury Department accepted the survey made and delivered the possession of every portion included in such survey, thus selling without first securing any consent or author-

ization the mangrove swamps which are tidelands (*playas*), according to Title I of the Law of Waters, and in order to do this it became necessary to assess their area at a price per unit other than that secured at the auction.

"No matter how anomalous the sale of these mangrove swamps might appear from the manner of its execution, it is consummated and those who bought in good faith are not or can not be made liable on account of such sale.

"It is regrettable that, because of the conveyance of that which under the Law of Waters is tideland and therefore government property without referring the matter to the naval authorities or to our Division within whose jurisdiction the mangrove swamps have been or still are, the parties concerned should have been inconvenienced by requiring them to produce documents and that their lawfully acquired rights should have been questioned.

"As no matter how anomalous the conveyance of the mangrove swamps contiguous to the Hato de Cangrejos Arriba might be, such conveyance was effected by the Treasury Department in behalf of the State, our Division has the honor to suggest to Your Excellency that such part of the mangrove swamps adjacent to lot No. 2 as was acquired by Suárez be excluded from the inventory of those belonging to the Government and that the public bidding for the exploitation thereof be discontinued."

On August 18, 1885, Governor General Dabán approved the report, and the following communication was sent to the Range Division:

"By order of His Excellency the Governor General I beg to inform you that on this date there has been forwarded to the Mayor of Carolina, with the indorsement of this Office, the report No. 360 of your Division dated the 11th instant, regarding the recognition of Bernardo Suárez as the owner of certain mangrove swamps in that district."

That being so, the successor of the Spanish Crown to the ownership of public lands in Puerto Rico is now precluded from contesting the ownership of the parcel of land here in dispute, most of which has ceased to be swamp land and is now pasture land.

Some question might be raised as to the power of the Governor General to ratify the sale of what was then a mangrove swamp; but even if it were concluded that he had no such power, it should have to be admitted that the plaintiff's predecessors in interest had already acquired title by prescription at the time of the change of sovereignty, since it appears that they had been in possession of the land as owners by purchase ever since 1873. See Royal Order No. 469 of August 20, 1888, published in the *Gaceta de Puerto Rico* on October 11, 1888. *Fajardo Sugar Growers Ass'n* v. *Kramer, ante,* pp. 337, 353.

In whatever aspect, then, that the case might be considered, it must necessarily be concluded that the plaintiff is right. Therefore, the judgment appealed from should be affirmed.